Statement.

| 94   229|
| f104  713|
| 104   714|

## 𝔍𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

### PIEDMONT BANK & OTHERS *v.* HATCHER & OTHERS.

#### January 14, 1897.

1. CHANCERY PLEADING—*Denial under oath of an endorsement—Burden o Proof.*—Where the answer of the maker of a note denies that the payee endorsed it to the complainant as alleged in the latter's bill, and the denial is supported by affidavit, as required by section 3279 of the Code, the burden of proof is thrown upon the complainant to show such endorsement, and in default thereof his bill should be dismissed.

2. FRAUD—*Evidence of other like frauds admissible.*—Where fraud in the sale and purchase of property is in issue, evidence of other frauds of like character, committed by the same party, at or about the same time, is admissible. Large latitude is always given to the admission of evidence where the charge is fraud.

3. NEGOTIABLE PAPER—*Fraud or illegality in its inception—Burden of Proof on holder to show bona fides, &c.*—If the maker of a negotiable note, or other party primarily bound for its payment, or bound by the original consideration, proves that it was obtained by fraud or illegality in its inception, or if the circumstances raise a strong suspicion of fraud or illegality, the holder of the note must show that he obtained it *bona-fide* for value in the usual course of business, before maturity, and under circumstances which create no presumption that he knew of the facts which impeach its validity.

Appeal from a decree of the Circuit Court of Orange county pronounced March 1, 1894, in a suit in chancery wherein the appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*James G. Field* and *John G. Williams*, for the appellants.

*G. D. Gray* and *R. L. Gordon*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The object of this suit was to set aside a conveyance of certain lands upon the ground that it was made to hinder, delay, and defraud the creditors of the grantor, and to subject the lands to the payment of certain negotiable notes held by the complainants, the appellants here.

The answer of one of the makers of the notes denied that the payee endorsed them to the complainant as alleged in the bill, and this denial is supported by an affidavit in accordance with the provisions of sec. 3279 of the Code. Upon that issue it was the duty of the complainants to prove that the notes sued on had been endorsed by the payee, or by some one authorized by him to endorse them. No proof whatever was taken upon that question, and the answers of the defendants, although somewhat ambiguous, do not, as the complainants insist, show that they were so endorsed. But if there were any doubt upon this point the bill was properly dismissed upon another ground.

The defendants aver that the notes sued on were procured by fraud. In what that fraud consisted was fully set out in the answer of one of the defendants, and the proof tends to show that the payee in the notes and his agents, who were engaged in selling a "patent churn power" and the right to sell the same in certain counties and States were a set of swindlers, selling a worthless and unsaleable article by the most disreputable devices. It not only tends to show that the representations that the churn power would churn more quickly, with less labor, do the work better, and was very saleable, were false, but that he actually used his agents as decoys to induce others, among them the makers of the notes in question, to become purchasers of the right to sell the patented article in certain sections, by agreeing to become interested with them in their purchases, and thus induced them to enter into contracts upon the faith of the representations made as to such

article, and by reason of the fact that the agents were willing to unite with them in the purchases, and that, after sales had been consummated in this way, the payee and his agents left the county of Orange, where they had been operating, to avoid criminal prosecutions for obtaining money or goods under false pretenses.

Where fraud in the sale or purchase of property is in issue, evidence of other frauds of like character, committed by the same parties, at or near the same time, is admissible. Its admissibility is placed upon the ground that, where transactions of similar character are executed by the same parties, and closely connected in point of time, the inference is reasonable that they proceed from the same motive. Large latitude is always given to the admission of evidence where the issue is fraud. *Trogdon's case,* 31 Gratt. 862, 873-4; *Lincoln* v. *Chaflin,* 7 Wall. 132; *Butler* v. *Watkins,* 13 Wall. 456; *New York Mutual Life Ins. Co.* v. *Armstrong,* 117 U. S. 591.

Facts having been proved by the defendants from which a jury would have been well warranted in concluding that the notes were procured from the makers by fraud, it devolved upon the complainants, the holders thereof, to prove that they had paid a consideration for them. Although the general rule is that the holder of a negotiable note, regular upon its face, is presumed to have acquired it before maturity for value and without notice of any infirmity in the paper, yet if the maker or party primarily liable for its payment, or any party bound by the original consideration, proves that it was obtained by fraud or illegality in its inception, or if the circumstances raise a strong suspicion of fraud or illegality, the burden of proof is shifted, and the holder of the note must show that he acquired it *bona fide* for value in the usual course of business while current, and under circumstances which create no presumption that he knew of the facts which impeach its validity. 1 Daniel on Neg. Inst. sec. 815; *Vathir*

v. *Zane,* 6 Gratt. 246; *Wilson* v. *Lazier,* 11 Gratt. 477; *Duerson* v. *Alsop,* 27 Gratt. at pages 248-9.

The complainants offered no proof whatever that they had paid a consideration for the notes, nor did they show under what circumstance they had obtained them.

The evidence of the defendants tended to show that the complainants knew for what consideration the notes were given, that it was worthless, and, in the language of one of them, that he knew it was a swindle from the beginning.

Other interesting and important questions were raised by the pleadings and argued by counsel, among them what relation to a negotiable note in the hands of a *bona fide* holder for value does a third person bear who signs his name in blank on the back of the note, and above the endorsement of the payee? Is he a maker, first or second endorser, or gurantor? And if the latter, can he show by parol evidence that he wrote his name upon the note after the makers had delivered it to the payee, and that there was no consideration for his guaranty?

But as these questions are not necessary to a decision of this case, we deem it best not to express any opinion upon them.

The decree appealed from must be affirmed.

*Affirmed.*